<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

———————————————————
BLANE FRIEST, *individually and on*
*behalf of a class of similarly situated*
*individuals*,

              Plaintiff,

v.

LUXOTTICA GROUP S.P.A.;
LUXOTTICA USA, LLC; LUXOTTICA
RETAIL NORTH AMERICA, INC.; THE
UNITED STATES SHOE CORP. t/a
LENSCRAFTERS; JOHN DOES 1-5; and
ABC CORPS 6-10,

              Defendants.

———————————————————

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 2:16-cv-03327-SDW-LDW

**OPINION**

December 16, 2016

**WIGENTON,** District Judge.

      Before this Court is the Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), of Defendants Luxottica Group S.p.A.; Luxottica USA, LLC; Luxottica Retail North America, Inc.; and The United States Shoe Corp. t/a LensCrafters ("LensCrafters") (collectively "Defendants"). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

      This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, Defendants' Motion is **GRANTED**.

**I.    FACTUAL HISTORY**

      Defendants are four companies, one of which, LensCrafters, operates 888 retail prescription eyewear stores throughout the United States, including thirty in New Jersey. (Compl.

¶¶ 12-16.)[1]  Plaintiff, Blane Friest ("Plaintiff"), a New Jersey resident, purchased prescription eyeglasses from Defendant LensCrafters at an unspecified location on approximately December 22, 2014.  (*Id.* ¶¶ 11, 18.)  Approximately seven months later, Plaintiff contacted a New Jersey LensCrafters store and requested his pupillary distance measurement ("PD") "with respect to the glasses he had previously purchased."[2] (*Id.* ¶ 19.)  However, "Defendants refused to disclose the pupillary distance of the glasses Plaintiff purchased from Defendants." (*Id.* ¶ 20.)[3]  As a result, Plaintiff contends, he was "locked in to getting a second pair [of prescription eyeglasses] from LensCrafters rather than being able to shop for a duplicate pair at another store having lower prices or purchasing a second pair on-line at a substantial discount." (*Id.* ¶ 52.)  Plaintiff, however, neither specifies whether he was ever examined at LensCrafters, whether he purchased a second pair of prescription eyeglasses from LensCrafters, nor whether he purchased or attempted to purchase a second pair of prescription eyeglasses at another store or online. (*See* Compl.)

Plaintiff further contends that Defendants' refusal to disclose Plaintiff's PD was part of a "policy whereby [Defendants] refuse to disclose . . . [PDs] to their customers, . . . so as to prevent their customers from using that measurement to obtain glasses from other retailers."  (*Id.* ¶ 47.)  In addition, Plaintiff claims that Defendants' advertising practices are problematic.

First, Plaintiff contends that Defendants advertise eye examinations online and that those advertisements "fail to reveal or warn that Defendants' policy is to refuse to disclose, to the

---

[1] According to the Complaint, Defendant Luxottica Group S.p.A. is the parent company of Luxottica USA, LLC and LensCrafters. (Compl. ¶¶ 13, 15.)  LensCrafters, in turn, is "the parent company of one or more of the other Defendants." (*Id.* ¶ 15.)

[2] Pupillary distance is "the measured distance between the patients [sic] pupils." *See* NEW JERSEY STATE BOARD OF OPTOMETRISTS REGULAR SESSION MINUTES, December 21, 2011 (Dkt. No. 7-3).

[3] Although the Complaint states that "Defendants" refused to provide Plaintiff with his PD, this Court assumes, for the purpose of this Opinion, that one of Defendant LensCrafters' employees refused to provide the PD measurement.

consumer, the pupillary distance of the eyeglasses the consumer purchases." (*Id.* ¶¶ 55-58.) According to Plaintiff, this advertisement is misleading because it "discloses the pupillary distance of the customer in the video advertisement." (*Id.* ¶ 56.) Importantly, Plaintiff does not contend that he actually saw this advertisement at any point.

Second, Plaintiff claims that the LensCrafters website advertises eye examinations but does not clearly state that the examinations are performed by independent doctors of optometry. (Compl. ¶¶ 65-68.) Specifically, Plaintiff contends that the main page of the LensCrafters website contains a link for scheduling eye exams. (*Id.* ¶¶ 66-67.) Once the user clicks that link, he or she must select a LensCrafters store location and is also prompted to "Please call to schedule an exam." (*Id.* ¶ 67.) Finally, if the user selects a location for an exam, he or she is directed to a third page where the customer *is* provided with notice that his or her exam will be performed by an independent doctor of optometry. (*Id.* ¶ 68.) Plaintiff does not specify whether he used this website to schedule an eye exam at LensCrafters; whether he was examined at LensCrafters; and, if he was examined at LensCrafters, whether that examination was performed by an independent doctor of optometry. (*See* Compl.)

Finally, Plaintiff claims that the LensCrafters website includes a list of fees for services performed by optometrists. (Compl. ¶ 73.) That list, allegedly, includes fees for fittings and eyeglass exams, even though those services are performed by ophthalmic technicians rather than optometrists. (*Id.* ¶¶ 72-73.) Accordingly, Plaintiff contends, "he has been lead [sic] to believe that he was being serviced by an optometrist for services that were actually performed by an ophthalmic dispenser or technician." (Compl. ¶ 78.) What Plaintiff does not state is whether he ever saw the list of fees or whether he had an eye exam performed at LensCrafters. (*See* Compl.)

3

Plaintiff now claims that, as a result of Defendants' refusal to provide Plaintiff's PD, Defendants' policy of refusing to provide PD measurements to customers, and Defendants' advertising practices; Defendants are liable for violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. ("N.J.S.A.") § 56:8–1 *et seq.* (Counts I-III); the Truth–in–Consumer Contract, Warranty, and Notice Act ("TCCWNA"), N.J.S.A. §§ 56:12–14 to 12–18 (Count IV); and the New Jersey Antitrust Act, N.J.S.A. §§ 56:9–3 and 56:9–4 (Counts V-VI).

## II.   PROCEDURAL HISTORY

On April 22, 2016, Plaintiff filed his Complaint in the Superior Court of New Jersey, Law Division, Essex County; on behalf of himself and all others similarly situated. (Dkt. No. 1.) Defendants Luxottica Retail North America, Inc., and Luxottica Group S.p.A. subsequently removed the action to this Court on June 8, 2016. (*Id.*)  On June 29, 2016, Defendants filed the Motion to Dismiss now before this Court. (Dkt. No. 7; *see* Defs.' Br. Supp. Mot. Dismiss ("Defs.' Br. Supp.").)  Plaintiff subsequently filed its brief in opposition to Defendants' Motion in this matter on August 1, 2016. (Dkt. No. 12; *see* Pl.'s Br. Opp. Mot. Dismiss ("Pl.'s Br. Opp.").)  Defendants filed their brief in reply on August 26, 2016. (Dkt. No. 17.)

## III.   LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d

4

224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

## IV.   DISCUSSION

### A.   Violation of the New Jersey Consumer Fraud Act

In Counts I-III of the Complaint, Plaintiff contends Defendants violated the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-1, *et seq.*, through violations of an underlying New Jersey regulation which governs training, licensing, and professional practice for ophthalmic dispensers and ophthalmic technicians.[4]  *See* N.J. Admin. Code ("N.J.A.C.") §§ 13:33-1.1, *et seq.*

---

[4] For simplicity, at times this Court uses the term "ophthalmic dispenser" to refer to both ophthalmic dispensers and ophthalmic technicians.

(the "Ophthalmic Dispenser Regulation") (Compl. ¶¶ 35-79.)   Before considering whether the Complaint sufficiently alleges facts to support the necessary elements of these CFA claims, this Court first considers whether Defendants are exempt from liability under the learned professionals exemption to the CFA.

Under the learned professionals exemption to the CFA, "members of 'learned professions,' including those who occupy a 'semi-professional status,' engage in 'an activity beyond the pale of the [CFA].'" *Plemmons v. Blue Chip Ins. Servs., Inc.*, 904 A.2d 825, 833 (N.J. Super. Ct. App. Div. 2006) (quoting *Macedo v. Dello Russo*, 840 A.2d 238, 242 (N.J. 2004) (holding that physicians providing services are exempt from CFA liability); *Vort v. Hollander*, 607 A.2d 1339, 1342 (N.J. Super. Ct. App. Div. 1992) (holding that attorneys providing services are exempt from CFA liability).   In *Plemmons*, for example, the Superior Court of New Jersey, Appellate Division, held that "an insurance broker is a semi-professional, who is subject to testing, licensing and regulation under other statutory provisions, and therefore is excluded from liability under the CFA for the performance of brokerage services." *Plemmons*, 904 A.2d at 828.   However, the *Plemmons* Court also noted that while insurance brokers may fall under the learned professionals exemption, "financial institutions and insurance companies that sell insurance policies 'as goods and services that are marketed to consumers' are subject to the CFA." *Id.* at 833 (first citing *Neveroski v. Blair*, 358 A.2d 473, 480 (N.J. Super. Ct. App. Div. 1976); then citing *Laufer v. U.S. Life Ins. Co. in N.Y.*, 896 A.2d 1101 (N.J. Super. Ct. App. Div. 2006); then citing *Varacallo v. Mass. Mut. Life Ins. Co.,* 752 A.2d 807 (N.J. Super. Ct. App. Div. 2000)).

According to Defendants, they are exempt from CFA liability because "[o]pthalmic dispensers and technicians must meet certain educational requirements and pass a technical examination given by the State Board in order to obtain licensure." (Defs.' Br. Reply at 5.)

6

However, Defendants are companies that employ ophthalmic dispensers and ophthalmic technicians.[5] [6]  Although Defendants attempt to lump themselves in with individual ophthalmic dispensers and technicians as learned professionals, the Ophthalmic Dispenser Regulation, which Plaintiff contends Defendants violated, draws a distinction:

> (a) The *employers of* all ophthalmic dispensers, ophthalmic technicians, apprentices and persons working under temporary permits, shall be responsible to ensure that all relevant statutes and rules are observed and complied with in their establishments.

N.J.A.C. § 13:33-5.4 (emphasis added).  Accordingly, the testing and licensing requirements under the regulations which would potentially make ophthalmic dispensers and technicians exempt from CFA liability do not appear to apply to Defendants except insofar as Defendants must ensure their employees comply with those requirements. *Id.*  Although the parties have not addressed whether Defendants have testing and licensing requirements of their own, it appears that Defendants are potentially subject to CFA liability like the financial institutions and insurance companies discussed in *Plemmons*, 904 A.2d at 833.  Therefore, on the record before this Court, it would be inappropriate to hold that Defendants are learned professionals exempt from CFA liability. Accordingly, this Court considers the sufficiency of the factual allegations underlying Plaintiff's CFA claims.

---

[5] N.J.S.A.§ 52:17B-41.5 defines an ophthalmic dispenser as "[a] person . . . who prepares and dispenses lenses, spectacles, eyeglasses or appurtenances thereto to the intended wearers thereof on written prescriptions from physicians or optometrists duly licensed to practice their profession, and in accordance with such prescriptions, interprets, measures, adapts, fits and adjusts such lenses, spectacles, eyeglasses or appurtenances thereto to the human face for the aid or correction of visual or ocular anomalies of the human eyes." *See also* N.J.A.C. § 13:33-5.5 (defining "ophthalmic dispenser").
[6] N.J.S.A. § 52:17B-41.5 defines an ophthalmic technician as "[o]ne having a knowledge of optics and skilled in the technique of producing and reproducing ophthalmic lenses and kindred products, and mounting same to supporting materials." *See also* N.J.A.C. § 13:33-5.6 (defining "ophthalmic technician").

### i. Count I- N.J.A.C. § 13:33-5.1(d)

In order to sufficiently state a claim for violation of the CFA, a plaintiff must allege "1) unlawful conduct by [the] defendant; 2) an ascertainable loss by [the] plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009). "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (quoting *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994) (internal quotation marks omitted). In Count I, Plaintiff alleges Defendants are liable under the CFA for a regulatory violation. (Compl. ¶¶ 35-53.) Specifically, Plaintiff contends that by refusing to provide Plaintiff with his PD, Defendants violated N.J.A.C. § 13:33-5.1(d) which provides, in relevant part:

> (d) If a patient requests that a licensed ophthalmic dispenser release an original prescription, the licensed ophthalmic dispenser shall release to the patient, without charge, the original prescription maintained as part of the licensed ophthalmic dispenser's records pursuant to (a) above.

In contrast, Defendants argue that Count I must be dismissed because N.J.A.C. § 13:33-5.1(d) does not require Defendants to release PD measurements and because Plaintiff has not sufficiently alleged that Defendants' refusal to release Plaintiff's PD measurement caused Plaintiff to suffer an ascertainable loss. (*See* Def.'s Br. Supp. at 15-20, 25-28.) This Court considers each of these arguments in turn.

It is undisputed that as part of record keeping requirements for ophthalmic dispensers under N.J.A.C. § 13:33-5.1, dispensers must maintain all "original prescriptions" they fill and also must release those prescriptions to eye-care customers upon request. *See* N.J.A.C. §§ 13:33-5.1(a), (d). Moreover, in addition to the original prescriptions, ophthalmic dispensers must maintain:

2. All data required in the preparation and dispensing of eyeglasses:

i. Frames, such as eye size, bridge size and temple length; and

ii. Lenses, such as sphere, cylinder, axis, prism base, add, patient pupillary distance (P.D.), eyeglass pupillary distance (P.S.) and height of segment (Seg) if multifocal, base curve, frame size, eye size, bridge size and temple length;

N.J.A.C. § 13:33-5.1(a)2.  As a result, Plaintiff contends, he is entitled to the release of his PD measurement. (Pl.'s Br. Opp. at 14-18.)   In contrast, Defendants argue that although they are required to maintain original prescriptions they fill as well as PD measurements they use in dispensing eyeglasses, the regulation does not require that the PD measurement be included in the prescription itself.  (Defs.' Br. Supp. at 15-20.)  As a result, Defendants contend, the regulation does not require release of a patient's PD measurement.  (*Id.*)  This Court agrees.

Although N.J.A.C. § 13:33-5.1(d) entitles the patient to the "original prescription" the ophthalmic dispenser filled in dispensing the patient's prescription eyeglasses, Section 5.1 does not define "original prescription."  However, Section 5.2(b) states:

(b) In order to insure the proper fabrication of lenses and eyewear, the following information must be obtained from the refractionist:

1. Complete prescription, including sphere, cylinder, axis, prism/base and add;

2. The ophthalmic dispenser must measure and/or specify the following:

i. Eye size, bridge size, temple length, frame shape and style, patient pupillary distance, optical centers and, if applicable, bifocal type, segment height and base curve;

3. Upon completion of the fabrication of such corrective lenses and prior to dispensing within the State of New Jersey, the lenses or finished eyeglasses shall be verified to insure the accuracy of the prescription, the sphere, cylinder, axis, prism/base, add, patient pupillary distance, segment height, frame size, eye size, bridge size and temple length. In addition, the eyewear must be adjusted for fit and verified for compliance with the standards, set forth in (a) above.

N.J.A.C. § 13:33-5.2(b).  Of note in Section 5(b) is the fact that while a "[c]omplete prescription" includes a patient's "cylinder, axis, prism/base and add" measurements, the patient's PD is not included in that list. *Id.* § 13:33-5.2(b)1.  In addition, the ophthalmic dispenser, as opposed to a doctor of optometry, "must measure and/or specify" the patient's PD. *Id.* § 13:33-5.2(b)2.  This latter point, that the ophthalmic dispenser measures the patient's PD, is consistent with Section 5.5(b) of the regulation which includes measuring a patient's PD as "within the scope of practice of a licensed ophthalmic dispenser." *Id.* § 13:33-5.5(b).  In contrast, an ophthalmic dispenser may not write a prescription: "A licensed ophthalmic dispenser may prepare and dispense to the intended wearer lenses, spectacles, eyeglasses . . . only if those preparations are based on a written prescription from a *licensed physician or licensed optometrist*. *Id.* § 13:33-5.5(a) (emphasis added).  In other words, under the Ophthalmic Dispenser Regulation, ophthalmic dispensers measure their patient's PD but do not write the patient's prescription.  In contrast, the licensed physician or licensed optometrist writes the patient's prescription but nothing in the Ophthalmic Dispenser Regulation requires the patient's PD to be included in the prescription.  Moreover, this understanding is consistent with guidance from the New Jersey State Board of Optometrists, explaining that because "[PD] measurements must be made relative to the eyeglass frame selected . . . . the patient must be measured by the seller and/or dispenser of the eyeglass frame." *See* NEW JERSEY STATE BOARD OF OPTOMETRISTS REGULAR SESSION MINUTES, December 21, 2011 (Dkt. No. 7-3).

In light of these considerations, the Ophthalmic Dispenser Regulation does not require a patient's PD measurement to be included in the patient's prescription.  In turn, although Plaintiff may be entitled to his "original prescription" under N.J.A.C. § 13:33-5.1(d), Defendants' refusal to provide Plaintiff's PD measurement does not itself violate N.J.A.C. § 13:33-5.1.  On this basis

alone, Count I must be dismissed.  However, even if Plaintiff was entitled to his PD measurement under the Ophthalmic Dispenser Regulation, Count I must be dismissed for the additional reason that the Complaint fails to sufficiently allege an ascertainable loss caused by the purported violation.

As discussed above, in order to plead a CFA claim, a plaintiff must sufficiently allege that a defendant's unlawful conduct caused the plaintiff to suffer an ascertainable loss.  *See Hoffman v. Hampshire Labs, Inc.*, 405 N.J. Super. 105, 113 (App. Div. 2009).  "An ascertainable loss under the CFA is one that is 'quantifiable or measurable,' not 'hypothetical or illusory.'" *D'Agostino v. Maldonado*, 78 A.3d 527, 537 (N.J. 2013) (quoting *Thiedemann v. Mercedes–Benz USA, L.L.C.*, 872 A.2d 783 (2005); *see also Jecas v. D & R Boats, Inc.*, No. A-3020-10T4, 2012 WL 4328323, at *4 (N.J. Super. Ct. App. Div. Sept. 24, 2012) ("Examples include an out-of-pocket loss, the replacement cost of a defective product, or a demonstrable loss in value.")

In Count I, Plaintiff alleged that as a result of Defendants' refusal to disclose his PD, "he was locked in to getting a second pair [of prescription eyeglasses] from LensCrafters rather than being able to shop for a duplicate pair at another store having lower prices or purchasing a second pair on-line at a substantial discount."  (Compl. ¶ 52.)  However, Plaintiff does not allege that he actually bought a second pair of glasses at LensCrafters.  (*See* Compl.)  Nor does Plaintiff allege that he purchased or attempted to purchase a second pair of eyeglasses at another retailer and that the cost of those glasses was somehow greater because Defendants did not disclose his PD measurement.  (*Id.*)  Without more, it is unclear how Defendants' refusal to provide Plaintiff's PD caused him to suffer any loss. *See Annecharico v. Raymour & Flanigan*, No. CV 16-1652(FLW), 2016 WL 7015615, at *8 (D.N.J. Nov. 30, 2016) ("[T]he plaintiff must plead facts establishing a causal nexus with the particularity required by Rule 9(b); that is, the plaintiff must allege facts that

connect defendant's alleged unlawful conduct and plaintiff's ascertainable loss.")  In addition, Plaintiff's vague assertion that he was "locked in to getting a second pair" of prescription eyeglasses from Defendants does not sufficiently state a plausible claim that he suffered a quantifiable or measureable loss.  The loss is hypothetical without any supporting allegation that Plaintiff tried and was unable to purchase glasses at a lower price without Defendants releasing his PD.  Accordingly, for these additional reasons, Count I is dismissed.

### ii. Count II- N.J.A.C. § 13:33-7.1(a)

In Count II of the Complaint, as in Count I, Plaintiff alleges Defendants violated the CFA by acting in violation of the Ophthalmic Dispenser Regulation. (Compl. ¶¶ 54-63.)  In this instance, Plaintiff contends Defendants' website includes an advertisement which "discloses the [PD] of the customer in the video advertisement." (*Id*. ¶ 56.)  According to Plaintiff, this advertisement violates N.J.A.C. § 13:33-7.1(a) which provides:

> (a) An ophthalmic dispenser or ophthalmic technician may advertise provided that the advertisement does not mislead or deceive the public or discredit others in the eye care field.

As a result of this alleged violation, as in Count I, Plaintiff alleges he was "locked in to getting a second pair of eyeglasses from LensCrafters" at a higher price than he could have gotten at a competing retailer. (Compl. ¶ 62.)  In arguing for dismissal of Count II, Defendants contend that the Complaint does not sufficiently allege an ascertainable loss caused by Defendants' purported violation of N.J.A.C. § 13:33-7.1(a).[7]  (*See* Def.'s Br. Supp. at 21, 25-27.)  Because the claimed

---

[7] Defendants also argue for dismissal of Count II on the basis that because they are not required to disclose a patient's PD, the challenged advertisement does not violate N.J.A.C. § 13:33-7.1(a).  Although it appears that Plaintiff did not respond to this argument, this Court does not dismiss Count II on this basis.  Whether the advertisement is misleading, in violation of N.J.A.C. § 13:33-7.1(a), is a factual determination that this Court will not make on a motion to dismiss.

loss is essentially identical to that claimed in Count I, Plaintiff has failed to sufficiently allege an ascertainable loss for those reasons discussed in Section IV.A.*i.*, *supra*.  Furthermore, Count II fails for the additional reason that Plaintiff has not sufficiently alleged that the advertisement caused Plaintiff's purported loss. *See Thiedemann*, 872 A.2d at 791 ("The limiting nature of the requirement allows a private cause of action only to those who can demonstrate a loss attributable to conduct made unlawful by the CFA.") (citing *Meshinsky v. Nichols Yacht Sales, Inc.*, 541 A.2d 1063, 1067 (N.J. 1988)) (citations omitted).  The Complaint does not allege Plaintiff saw the advertisement before purchasing prescription glasses from Defendants. (*See* Compl.)  Without such a factual allegation, it is unclear how Defendants' advertisement had any bearing on Plaintiff's decision to purchase glasses from Defendants.  Accordingly, Count II is dismissed.

### iii.  Count III- N.J.A.C. §§ 13:33-7.1(f) and 7.2(c)

In Count III of the Complaint, as in Counts I and II, Plaintiff alleges Defendants violated the CFA by acting in violation of the Ophthalmic Dispenser Regulation. (Compl. ¶¶ 65-79.) However, in Count III Plaintiff contends Defendants' conduct violated two provisions of the regulation. (*Id.*)  First, Plaintiff claims that the LensCrafters website advertises eye examinations but does not clearly state that the examinations are performed by independent doctors of optometry (an "independent optometrist notice"), in violation of N.J.A.C. § 13:33-7.1(f) (*Id.* ¶¶ 65-71.) Second, Plaintiff alleges that the LensCrafters website includes a list of fees for services purportedly performed by optometrists when those services are actually performed by ophthalmic technicians. (*Id.* ¶¶ 72-73.)  By posting this list of fees, Plaintiff contends, Defendants violated N.J.A.C. § 13:33-7.2(c).  This Court considers both of these claims in turn.

With regard to Plaintiff's first claim in Count III, Plaintiff contends that although the main page of the LensCrafters website contains a link for scheduling eye exams, it is not until the user

clicks that link and selects a LensCrafters store location, that he or she is directed to a third page where the customer is provided with notice that his or her exam will be performed by an independent doctor of optometry.  (Compl. ¶¶ 65-68.)  According to Plaintiff, by failing to notify the website user on the initial website page that his or her eye exam will be with an independent doctor of optometry, Defendants violated N.J.A.C. § 13:33-7.1(f), which provides:

> (f) Licensees may advertise eye examinations provided they state that the examination is performed by an independent doctor of optometry or ophthalmologist.

However, the Complaint does not specify whether Plaintiff used the LensCrafters website to schedule an eye exam at LensCrafters; whether he was examined at LensCrafters; and if he was examined at LensCrafters, whether an independent doctor of optometry performed the exam. (*See* Compl.)  Moreover, the Complaint does not appear to allege that Plaintiff suffered any loss as a result of Defendants purported failure to clearly provide an independent optometrist notice. Accordingly, insofar as Count III is premised on Defendant's violation of N.J.A.C. § 13:33-7.1(f), it fails to sufficiently state a claim under the CFA.

With regard to Plaintiff's second claim in Count III, Plaintiff contends that the LensCrafters website violates N.J.A.C. § 13:33-7.2(c) by suggesting that ophthalmic dispensers or technicians are "qualified to give professional advice concerning eye care or perform eye examinations." (Compl. ¶ 74.)  Specifically, the website includes a list of fees for services performed by optometrists, including eyeglass exams, when those services are actually performed by ophthalmic technicians.  (*Id*. ¶¶ 72-73.)  Accordingly, Plaintiff contends, "he has been lead [sic] to believe that he was being serviced by an optometrist for services that were actually performed by an ophthalmic dispenser or technician."  (Compl. ¶ 78.)  The Complaint does not, however, state that Plaintiff saw this list of fees before purchasing any services at LensCrafters. (*See* Compl.)  Nor does the Complaint state that he actually had an eye exam at LensCrafters. (*Id*.)  Finally, the Complaint

does not allege that the results of such an eye exam were somehow of a lesser value than what he was promised. (*Id.*)  Although Plaintiff contends that Defendants misrepresented the qualifications of those performing eye exams he alleges neither an "out-of-pocket loss [n]or a . . . loss in value." *See Thiedemann*, 872 A.2d at 792–93.  Accordingly, insofar as Count III is premised on a violation of N.J.A.C. § 13:33-7.2(c), Plaintiff has failed to sufficiently allege that he suffered an ascertainable loss caused by Defendants' conduct.

### B.        Count IV- Violation of the TCCWNA

In Count IV of the Complaint, Plaintiff contends Defendants' website violates Section 15 of the TCCWNA by "(a) fail[ing] to clearly indicate that the P.D. is not provided to customers upon request and (2) [sic] . . . fail[ing] to clearly state that the optometrists who work out of LensCrafters in New Jersey are not independent optometrists . . . ."[8] (Compl. ¶ 83.)  The TCCWNA, which the New Jersey legislature enacted in 1981, "was designed to address the inclusion of provisions in consumer contracts, warranties, notices, and signs that violate consumer rights." *Shelton v. Restaurant.com, Inc.*, 214 N.J. 419, 431 (2013) (citing *Statement to Assembly Bill No. 1660* (May 1, 1980) ("Sponsor's Statement")).  However, the "TCCWNA does not establish consumer rights or seller responsibilities.  Rather, the statute bolsters rights and responsibilities established by other laws."  *Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 134–35 (3d Cir. 2014).  Therefore, to state a claim under Section 15 of the TCCWNA, the Complaint must sufficiently allege that "(1) [Plaintiff] is a consumer; (2) [Defendants are] seller[s]; (3) '[Defendants] offer[ ] a consumer contract' or give[ ] or display[ ] any written notice, or sign; and

---

[8] Although the Complaint alleges that the LensCrafters website "fails to clearly state that the optometrists who work out of LensCrafters in New Jersey are *not* independent optometrists," this Court assumes, for purposes of this Opinion and based on other portions of the Complaint, Plaintiff did not intend to include the word "not" in the quoted sentence.  (*See* Compl. ¶ 83 (emphasis added).)

(4) the contract, notice or sign includes a provision that 'violate[s] any legal right of a consumer' or responsibility of a seller." *Id.* at 135 (citing *Bosland*, 396 N.J. Super. at 278).

Furthermore, in addition to the requirements outlined in Section 15, Section 17 of the TCCWNA states:

> Any person who violates the provisions of this act shall be liable to the *aggrieved consumer* for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs. This may be recoverable by the consumer in a civil action in a court of competent jurisdiction or as part of a counterclaim by the consumer against the seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid, who *aggrieved* him. A consumer also shall have the right to petition the court to terminate a contract which violates the provisions of section 2 of this act[1] and the court in its discretion may void the contract.

N.J.S.A. § 56:12-17 (emphasis added).  Therefore, to pursue a claim under the TCCWNA, Plaintiff must be an aggrieved consumer.  (*Id.*)

In light of these requirements, Plaintiff alleges that by "(a) fail[ing] to clearly indicate that the P.D. is not provided to customers upon request and (2) [sic] . . . fail[ing] to clearly state that the optometrists who work out of LensCrafters in New Jersey are not [sic] independent optometrists . . . ," Defendants have violated the CFA and N.J.A.C. §§ 13:33-5.1, 7.1(a), 7.1(f), and 7.2.  (Compl. ¶¶ 83-84.)  Furthermore, Plaintiff contends that these violations are predicate acts through which Defendants violated Section 15 of the TCCWNA.  (Compl. ¶¶ 80-85.)  However, as Plaintiff has not sufficiently alleged that this conduct violates the CFA, this Court need only consider whether the alleged violations of the Ophthalmic Dispenser Regulation can support his claims under the TCCWNA. *See* Section IV.A., *supra; see also, e.g.*, *Wilson v. Kia Motors Am., Inc.*, No. CIV.A. 13-1069, 2015 WL 3903540, at *5 (D.N.J. June 25, 2015), *appeal dismissed* (Nov. 18, 2015) (holding that because "[the p]laintiff cannot establish a violation of a 'clearly established legal right' under the CFA. . . [the plaintiff] therefore cannot, by proxy, establish a violation of the TCCWNA.")  Moreover, because this Court has determined that

Defendants were not required under the Ophthalmic Dispenser Regulation to release Plaintiff's PD, this Court need not address in detail why Defendants' failure to "indicate that the P.D. is not provided to customers upon request" does not provide a basis for a TCCWNA claim.   Neither Plaintiff's Complaint nor his brief in opposition have identified any authority under which Defendants would be required to provide such notice.   Therefore, this Court must determine whether Plaintiff has sufficiently stated a TCCWNA claim insofar as he alleges Defendants violated N.J.A.C. §§ 13:33-5.1, 7.1(a), 7.1(f), and 7.2 by failing to clearly provide an independent optometrists notice.   This analysis is limited further by the fact that, of these provisions, only N.J.A.C. § 13:33-7.1(f) addresses independent optometrist notices.

Although Defendants apparently concede that Plaintiff is a "consumer," that they are "seller[s]," and that the LensCrafters website constitutes a "written notice" or "sign," Defendants argue that Count IV fails, nonetheless, because, *inter alia*, the Complaint does not allege that Plaintiff had an eye examination at a New Jersey LensCrafters location or that such an examination was *not* performed by an independent optometrist.   (Defs.' Br. Reply. At 13.)   In other words, Defendants argue that Plaintiff is not an aggrieved consumer under the TCCWNA.

As discussed above, Section 17 of the TCCWNA provides, in relevant part, that "Any person who violates the provisions of this act shall be liable to the *aggrieved consumer* for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs. (emphasis added).   However, the TCCWNA does not define the term "aggrieved consumer."   *See* N.J.S.A. § 56:12-14, *et seq*.   Nor is the term "aggrieved consumer," as used in the TCCWNA, unambiguous on its face.   Therefore, this Court must look to other sources in order to determine the term's definition.   *See McGarvey v. Penske Auto Grp., Inc.*, 486 F. App'x 276, 280 (3d Cir. 2012) ("If the language of the statute is

17

ambiguous, courts may look to the statute's history, policy, purpose, and other extrinsic aids to ascertain statutory intent." (quoting *Liberty Lincoln–Mercury, Inc. v. Ford Motor Co.,* 676 F.3d 318, 324 (3d Cir. 2012) (internal quotation marks omitted))).

In *Wegner v. Bob's Discount Furniture, LLC*, U.S. District Judge Peter Sheridan held that an "aggrieved consumer" under the TCCWNA "is one who is suffering the effects of a violation." 3:14-cv-07707-PGS-LHG, Dkt. No. 73, Tr. 16:7-8 (D.N.J. Feb. 29, 2016); *see also Cameron v. Monkey Joe's Big Nut Co.*, 2008 N.J. Super. Unpub. LEXIS 3061 (Law Div. Aug. 4, 2008) **("**The Act does not define the term 'aggrieved,' but logically it would refer to one suffering the effect of a violation of the Act.")**.** This definition is in line with the definition of "aggrieved party" in Black's Law Dictionary: "A party entitled to a remedy; esp., a party whose personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment." PARTY, Black's Law Dictionary (10th ed. 2014). In addition, this definition is supported by the legislative history of the TCCWNA. The Sponsor's Statement to the TCCWNA shows a concern with illegal or unenforceable terms that, through "their very inclusion in a contract, warranty, notice, or sign *deceive*[] a consumer into thinking that they are enforceable . . . ." Sponsor's Statement (emphasis added); *see also Walters v. Dream Cars Nat.*, *LLC*, No. BER-L-9571-14, 2016 WL 890783, at *6 (N.J. Super. L. Mar. 7, 2016) ("[T]he Legislature intended that TCCWNA only target those vendors that engage in a *deceptive* practice and sought only to punish those vendors that in fact deceived the consumer, causing harm to the consumer.") Therefore, this Court must determine whether the Complaint sufficiently alleges that Plaintiff suffered the effects of a TCCWNA violation, such that he is an aggrieved consumer.

Although Plaintiff contends that Defendants violated the TCCWNA by failing to clearly indicate that eye examinations would be performed by independent optometrists, the Complaint

18

does not allege that Plaintiff ever visited Defendants' website.  How Plaintiff could have suffered the effects of Defendants' failure to provide such notice on their website is unclear.  Nor could Plaintiff have been aggrieved by such a failure without having actually had an eye exam at LensCrafters.  As a result, the Complaint fails to sufficiently allege that Plaintiff is an aggrieved consumer under the TCCWNA.  Therefore, Dismissal of Count IV is warranted.

Furthermore, Defendants argue that dismissal of Count IV is warranted for the additional reason that the TCCWNA only applies to illegal provisions *included* in covered writings and that omissions, such as the failure to provide an independent optometrist notice, is not actionable under the TCCWNA.  (Defs.' Br. Supp. at 29-30.)  This argument is based on the plain wording of Section 15 of the TCCWNA which provides, in relevant part, that "[n]o seller . . . shall . . . give or display any written consumer warranty, notice or sign . . . which *includes* any provision that violates any clearly established legal right of a consumer or responsibility of a seller . . . ." N.J.S.A. § 56:12-15.  In response, Plaintiff argues that omissions are, in fact, actionable under the TCCWNA.  (Pl.'s Br. Opp. at 25-28.)  This Court disagrees.

In *Watkins v. DineEquity, Inc.*, the Third Circuit Court of Appeals held that an omission was not actionable under the TCCWNA. 591 F. App'x at 136.  In *Watkins*, the defendants provided patrons at defendants' restaurants with menus that listed, but did not provide the prices of, "soda, beer, mixed drinks, wine, coffee, and . . . other beverages." *Id.* at 133. (internal quotation marks and citation omitted.) The predicate act, which the plaintiff-consumer alleged in support of her TCCWNA claim was violation of the following provision of the CFA:

> It shall be unlawful for any person to sell, attempt to sell, or offer for sale any merchandise at retail unless the total selling price of such merchandise is plainly marked by stamp, tag, label or sign either affixed to the merchandise or located at the point where the merchandise is offered for sale.

N.J.S.A. § 56:8-2.5.  However, the Third Circuit nonetheless reached the conclusion that providing a menu without beverage prices was not actionable under the TCCWNA. *Id*. at 136.

Plaintiff's claim that Defendants advertised eye examinations but failed to provide notice that the examinations are performed by independent optometrists is analogous to the plaintiff's claim in *Watkins*.  N.J.A.C. § 13:33-7.1(f) is similar to the CFA provision at issue in *Watkins* insofar as the regulation requires that if a defendant advertises its services (or in *Watkins*, sells its products) the defendant must also provide other information: in this instance an independent optometrist notice, and in *Watkins*, beverage prices.  Moreover, as the defendant in *Watkins* was accused of failing to provide beverage prices, Defendants in this matter are accused of failing to provide an independent optometrist notice.   Such an omission is not actionable under the TCCWNA.  Therefore, on this additional basis, Count IV is dismissed.

### C.      Violation of the New Jersey Antitrust Act

#### i. Count V- N.J.S.A. § 56:9-3

In Count V of the Complaint, Plaintiff alleges Defendants "acted in concert to restrict competition in New Jersey . . . by refusing to provide customers with their [PD] when they purchase prescription eyewear at LensCrafters." (Compl. ¶ 88.)   As a result, Plaintiff claims, Defendants violated N.J.S.A. § 56:9-3 which provides:

> Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, in this State, shall be unlawful.

In construing Plaintiff's claim under this provision of the New Jersey Antitrust Act, this Court must look to the federal courts' interpretation of a similar provision in the Sherman Antitrust Act, 15 U.S.C. § 1. *See* N.J.S.A. § 56:9-18 ("This act shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes and to effectuate, insofar as practicable, a uniformity in the laws of those states which enact it.")  Therefore, "[t]o state a claim under either

20

Section 1 of the Sherman Act or the New Jersey Antitrust Act § 56:9–3, a complainant must allege that two or more entities formed a combination or conspiracy." *St. Clair v. Citizens Fin. Grp.*, 340 F. App'x 62, 65 (3d Cir. 2009) (first citing *Twombly,* 550 U.S. at 548; then citing *Patel v. Soriano*, 848 A.2d 803, 827 (N.J. Super. Ct. App. Div. 2004)).  In addition, Plaintiff must have sufficiently alleged that through the combination or conspiracy, Defendants "produced anticompetitive effects within the relevant product and geographic markets; . . . that the concerted actions were illegal; and . . . that [Plaintiff] was injured as a proximate result of the concerted action." *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 639 (3d Cir. 1996) (quoting *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* 998 F.2d 1224, 1229 (3d Cir.), *cert. denied sub nom. Moyer Packing Co. v. Petruzzi's IGA Supermarkets, Inc.,* 510 U.S. 994 (1993)) (internal quotation marks omitted). Finally, in order to sufficiently allege a combination or conspiracy in violation of the New Jersey Antitrust Act, the Complaint must allege an "unlawful arrangement between, at minimum, two independent, self-interested economic entities."  *Patel*, 848 A.2d at 827 (citing *Urdinaran v. Aarons,* 115 F.Supp.2d 484, 488 (D.N.J. 2000)); *see also Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 195 (2010) ("The relevant inquiry, therefore, is whether there is a 'contract, combination ... or conspiracy' amongst 'separate economic actors pursuing separate economic interests[.]'" (quoting *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984))).

In light of these requirements, Defendants argue that Count V must be dismissed because, *inter alia*, the Complaint does not allege a combination or conspiracy between independent, self-interest economic entities but, instead, alleges coordination between a parent corporation and its subsidiaries. (Defs.' Br. Supp. at 32-34.)   In response, Plaintiff apparently concedes that Defendants are not distinct entities which may conspire in violation of   N.J.S.A. § 56:9-3. (Pl.'s Br. Opp. at 31-33.)   Yet, in an effort to salvage his claim, Plaintiff argues that the conspiracy

alleged in the Complaint was between Defendants and independent optometrists. (*Id.* at 33.) However, this allegation is absent from the Complaint and Plaintiff may not amend his Complaint via his brief in opposition. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied,* 470 U.S. 1054 (1984) (internal quotation marks omitted))). Accordingly, Count V is dismissed for failure to sufficiently state a claim.

### ii. Count VI- N.J.S.A. § 56:9-4

In Count VI of the Complaint, Plaintiff alleges Defendants violated N.J.S.A. § 56:9-4 which provides:

> It shall be unlawful for any person to monopolize, or attempt to monopolize, or to combine or conspire with any person or persons, to monopolize trade or commerce in any relevant market within this State.

According to the Complaint, by refusing to disclose patients' PDs, Defendants have attempted to monopolize the New Jersey prescription eyewear market. (Compl. ¶¶ 101-02.)  The elements necessary to plead such a claim are the same as those required under Section 2 of the Sherman Antitrust Act:

> To state a claim of monopolization in contravention of Section 2 of the Sherman Act and its analog, the New Jersey Antitrust Act § 56:9–4, a plaintiff must allege:
>
>> '(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'

*St. Clair*, 340 F. App'x at 65 (quoting *Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.*, 159 F.3d 129, 141 (3d Cir. 1998); then citing *Patel*, 848 A.2d at 829–30.)  Moreover, "[t]o state a claim for *attempted* monopolization, a plaintiff must allege '(1) that the defendant has

engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 412–13 (3d Cir. 1997) (quoting *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456 (1993); then citing *Barr Lab., Inc. v. Abbott Lab.*, 978 F.2d 98, 112 (3d Cir. 1992)).  Although it is unclear where in the Complaint Plaintiff has alleged a monopoly claim, he now contends that the Complaint includes both a monopoly and an attempted monopoly claim.  (Pl.'s Br. Opp. 43-49.)  However, for the reasons discussed below, Plaintiff has not sufficiently pled a violation of N.J.S.A. § 56:9-4 under either theory.

In order to state a claim for monopolization or attempted monopolization, respectively, the Complaint must contain sufficient factual allegations to plausibly assert Defendants possess, or have a dangerous probability of achieving, monopoly power in the relevant market.  *See St. Clair*, 340 F. App'x at 65; *Patel*, 848 A.2d at 829–30.  In support of Count VI, Plaintiff has alleged Defendants operate over 7,000 retail stores "world-wide," 2,433 locations in the United States, and thirty in New Jersey. (Compl. ¶¶ 1, 98-99.)  In addition, Plaintiff alleges "Luxottica's retail division is the number one optical retailer in the United States . . . ."  (Compl. ¶ 99.)  However, the Complaint fails to discuss Defendants' market share in the relevant market, "the strength of competition, probable development of the industry, the barriers to entry, . . . and the elasticity of consumer demand." *See St. Clair*, 340 F. App'x at 65-66 (quoting *Barr Labs., Inc*, 978 F.2d at 112 (internal quotation marks omitted)). In light of this dearth of factual allegations, the Complaint does not plausibly allege that Defendants possess, or have a dangerous probability of achieving, monopoly power in the relevant market.  Accordingly, Count VI is dismissed.

**V.      CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**.

Specifically, Count I is dismissed with prejudice and Counts II-VI are dismissed without prejudice.

An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**


Orig:          Clerk
cc:            Magistrate Judge Leda D. Wettre
               Parties